UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALFONZO FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 5120 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| D. GUERRERO, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Alfonzo Fields, formerly a detainee at the Cook County Jail, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging in his amended complaint that Defendant Officers Guerrero and Pena stood by and watched while another inmate physically assaulted him on September 2, 2021. Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because no reasonable jury could find that Defendants failed to protect Fields from harm, the Court grants Defendants' motion and enters judgment for them in this case.

### BACKGROUND[1]

At all relevant times, Fields was a detainee at the Cook County Department of Corrections ("CCDOC"), where Officers Guerrero and Pena worked as correctional officers. On

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts, the supporting exhibits, and the video of the incident. To the extent that Fields objects to the Joint Statement of Undisputed Facts, the Court previously resolved his objection. *See* Doc. 61. The Court takes all facts in the light most favorable to Fields, the non-movant.

After the parties completed briefing on the motion for summary judgment, Fields filed a motion seeking to submit what he describes as "additional new evidence." Doc. 73. The filing consists of more than 100 pages of grievances and grievance responses unrelated to this incident, which Fields states he submitted to "shed some light on possible harassment and conspiracy!" *See* Doc. 69 at 4. The Court does not see the relevance of these grievances, however, as they are mainly from 2022, after the incident at issue occurred.

September 2, 2021, Fields lived in Division 2, Dorm 2, U House.[2] On that date, Fields was involved in an incident with other inmates that forms the basis of this lawsuit.

According to Fields, during second shift between 3 p.m. and 11 p.m., he encountered a detainee named Darrell Welborne near his bunk. Fields suspected Welborne to be a thief, and they exchanged words. Fields further believed that Welborne posed a threat based on Welborne's body language. But Fields did not expect Welborne to fight him, and he did not tell any officers about Welborne's body language or their interactions prior to the fight. Fields testified that Welborne threw the first punch. At some point, another detainee, Denzel Mukes, joined the fight to defend Fields. According to Fields, Mukes saw Fields hit his head on a bunk bed due to one of Welborne's punches and so responded by punching Welborne several times.

Officer Guerrero stated that he heard a commotion coming from U House, entered the tier, and saw Fields and Welborne engaged in a fight. According to Officer Guerrero, several officers then gave multiple orders for the detainees to stop fighting. All detainees stopped fighting, and officers escorted them separately to receive medical attention.

A video recording also captured this incident. The three minute and three second video, which has no sound, depicts the following:[3] Fields, wearing a white T-shirt, pulls a green

---

Because they do not suggest that either Officers Guerrero or Pena violated Fields' rights in connection with the incident at issue in this case, nor do they support the proposition that either officer conspired against Fields or harassed him, the Court denies his request to submit this additional evidence and disregards the attached exhibits in deciding this motion. Further, the Court also notes that to the extent that Fields seeks criminal prosecution of Defendants, he cannot obtain such relief in this lawsuit. *See Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *7 (N.D. Ill. June 25, 2009) (private citizen has no legally cognizable interest in the prosecution of another person).

[2] The record is not entirely clear as to whether Fields was housed in Division 2, as he testified, or housed in a Division 6 annex, as reflected in Officer Guerrero's declaration. *Compare* Doc. 63-2 at 31:2–3 (Fields' deposition testimony), *with* Doc. 63-5 ¶¶ 2, 4 (Officer Guerrero's declaration). Ultimately, this discrepancy has no bearing on the resolution of the case.

[3] The Court has identified the various participants based on Fields' deposition testimony. *See* Doc. 63-2 at 49:22–55:16.

mattress off one of the bunk beds. Welborne, in a brown shirt and pants, then walks toward Fields and the two appear to exchange words. Around seventeen seconds into the video, the men both enter fighting stances. This continues for a bit, and at about fifty-three seconds, Welborne kicks at Fields. The men then exchange blows, with Welborne repeatedly punching Fields between two bunk beds. Fields goes to the ground but then gets up, after which Welborne punches Fields' head on or near a bunk bed. At around one minute and thirteen seconds into the video, Mukes joins the fight and strikes Welborne. Fields gets one quick punch in seconds thereafter, at the same time that officers arrive at the dorm door. The officers walk toward the men, making gestures that indicate they are giving verbal commands for the men to separate. The officers then begin to physically separate the men at around one minute and twenty-nine seconds, with the officers then separately escorting the men from the dorm.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P.

56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

With respect to the video evidence in this case, the Supreme Court has stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Seventh Circuit has emphasized, however, that video evidence "can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023); *see also Gant v. Hartman*, 924 F.3d 445, 449 (7th Cir. 2019) ("*Scott* holds that where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review.").

## ANALYSIS

Fields claims that Defendants failed to protect him from harm on September 2, 2021. As a pretrial detainee at the time of the incident, Fields' failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment and is governed by an objective reasonableness standard. *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022); *Hardeman v. Curran*,

4

933 F. 3d 816, 823 (7th Cir. 2019). A failure to protect claim arising under the Fourteenth Amendment consists of four elements: "(1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries." *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). The mere fact of detainee-on-detainee violence does not suffice to impose liability on a correctional officer. *Id.* at 842 (observing that "[t]he unfortunate reality is that jails and prisons are dangerous places inhabited by violent people" and that while correctional officers must act reasonably under the circumstances, they are not required to "anticipate every potential danger facing a detainee"); *see also Dawson v. Dart*, No. 17-cv-00283, 2020 WL 1182659, at *2 (N.D. Ill. Mar. 12, 2020) (to be liable, officer must be on notice of substantial risk of harm that exceeds the "baseline dangerousness of prison life" (quoting *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008))). "A failure to protect claim requires 'a 'strong likelihood' rather than a 'mere possibility' that violence will occur' in order to impose liability." *Hamilton v. Gavin*, No. 22 C 2285, 2023 WL 2161663, at *5 (N.D. Ill. Feb. 22, 2023) (quoting *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006)). Additionally, "the defendant officer must intend to carry out a certain course of actions; negligence is not enough. At that point, the remaining question is whether that course is objectively reasonable. If not, there is a Fourteenth Amendment violation." *Kemp*, 27 F.4th at 497.

Defendants make three arguments as to why Fields cannot prevail on his claim: (1) the evidence does not support finding that Officer Pena had personal involvement in the incident,

5

(2) Fields has not shown that Defendants failed to protect him from harm, and (3) qualified immunity shields Defendants. The Court need only address the second argument because, based on the record before it, no reasonable jury could find that Defendants failed to protect him from harm.[4] As the Court understands it, Fields contends that Defendants should have intervened in the fight more quickly. At Fields' deposition, he testified that he believed that officers watching the video surveillance in real time saw Fields and Welborne "sizing each other up" and getting into a "combat stance" and as such should have intervened more quickly rather than waiting until Fields struck his head on the bunk bed. Doc. 63-2 at 49:1–21.

Fields, however, has failed to marshal evidence to support his failure to protect claim. The fight between Fields and Welborne broke out unexpectedly, and Fields admits that he did not provide the officers with any advance notice of his having any issues with Welborne. Nor has he presented evidence that Defendants should have known of the risk of attack before it occurred or that they could have taken any different action to prevent it from occurring. *See Jones v. Williams*, No. 18-cv-03686, 2021 WL 3408508, at *12 (N.D. Ill. Aug. 4, 2021) (collecting cases rejecting failure to protect claims by pretrial detainees when the defendant correctional officers did not know or have reason to know of the threat). As Defendants correctly argue, they could not take any action to prevent the fight before it started because they did not have any reason to know of the potential for the fight. *See Young v. Dart*, No. 17-cv-

---

[4] The Court acknowledges that a defendant must have "direct personal involvement" in the deprivation of a plaintiff's constitutional rights to be civilly liable under § 1983. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). Here, a jury would be hard-pressed to find that Officer Pena had any involvement in the incident so as to expose him to liability. Fields argues that Officer Pena's name is listed on the incident report, but the record does not support this argument. *See* Doc. 63-4 (no mention of Officer Pena in the incident report); Doc. 63-6 ¶¶ 4–7 (Officer Pena disclaiming having met Fields or having any interactions with him on September 2, 2021). For purposes of summary judgment, however, the Court assumes that Officer Pena may have been one of the unnamed officers who responded to the incident.

1914, 2021 WL 3633927, at *15 (N.D. Ill. Aug. 17, 2021) ("Courts do not impose liability on prison officials for failure to protect when random attacks occur without any advance notice.").

Fields' claim, then, hinges on whether Defendants responded in an objectively reasonable manner once they became aware of the attack. When an inmate is under attack, correctional officials cannot stand by and do nothing. *See Kozar v. Munoz*, 230 F. Supp. 3d 915, 921 (N.D. Ill. 2017) (officers faced with an ongoing assault must take reasonable measures to abate the danger). "[A]n immediate intervention in an inmate-on-inmate assault is not necessary," however. *Eddmonds v. Walker*, 317 F. App'x 556, 558 (7th Cir. 2009). The parties agree that Officer Guerrero heard a commotion coming from the U House, requested back-up, and entered the tier to see Fields and Welborne engaged in a fight. Fields claims in his response that the video footage shows a response "within 3 minutes," Doc. 69 at 1, presumably contending that amounts to an unacceptable delay. Initially, while the video lasts a little over three minutes, it shows the officers began physically separating the men involved about a minute and a half after the fight broke out. And even assuming that it took the officers three minutes to respond, this nonetheless short delay does not support a constitutional violation. *See Pulera v. Sarzant*, 966 F.3d 540, 555–56 (7th Cir. 2020) (rejecting "hindsight-laden" assessment of Defendants' actions and finding that officers who responded to attempted suicide in less than two minutes and summoned an ambulance in less than five minutes acted reasonably); *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018) (no deliberate indifference where one officer called for backup after inmate-on-inmate assault occurred and then acted to restore order once other officers arrived, despite the fact that "[t]he officers plausibly could have removed [the plaintiff] from the situation even faster and thereby reduced or prevented his injuries"); *Shields v. Dart*, 664 F.3d 178, 181–82 (7th Cir. 2011) (no deliberate indifference where officer observed fight, called for backup,

7

and monitored the fight for fifteen to twenty minutes before intervening with other officers to stop the fight); *Young*, 2021 WL 3633927, at *6 ("The Constitution does not require correctional officers to have cat-like reflexes[.]").

Fields also suggests that the footage of the incident has been "altered," with parts of it missing. *See* Doc. 69 at 1. But he points to no evidence in the record to support this allegation, and his speculation cannot defeat a properly supported motion for summary judgment. *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Similarly, while Fields seems to contend that Defendants saw the attack as it was unfolding and deliberately waited until after he hit his head to respond, he offers no evidence in support of this proposition. He has presented no evidence that Defendants had responsibility for monitoring the video cameras on the tier that day or that they could have responded to the fight any quicker if they saw it unfold on video. Because speculation cannot create a disputed issue of fact on the reasonableness of Defendants' response, and Fields has pointed to no evidence in the record to support his failure to protect claim, the Court grants summary judgment for Defendants.[5]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [62] and denies Fields' motion to add "additional new evidence" [73]. The Court enters judgment for Defendants and terminates this case.

---

[5] Fields submitted a "pleading" in which he states that Defendants failed to produce video of his injuries taken at the dispensary on the date of the incident, which he claims he needs to show the extent of his injuries. Doc. 74. But because Fields has not brought forth evidence that either Officer Guerrero's or Officer Pena's actions caused his injuries so as to support a claim for failure to protect him in violation of his Fourteenth Amendment rights, the Court does not find it necessary to further address issues concerning the production of any video evidence of his injuries from the dispensary.

8

If Fields wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1). If Fields seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. Fed. R. App. P. 24(a)(1).

Fields need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Motions for reconsideration serve a limited purpose and are only appropriate to bring to the Court's attention a manifest error of law or fact or newly discovered evidence. *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A motion for reconsideration "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted); *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (a Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995))).

However, if Fields wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). He must file any Rule 59(e) motion within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). The Court cannot extend the time to file a motion pursuant to Rule 59(e). Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Court rules on the motion. Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). The Court cannot extend the time to file a Rule 60(b) motion, Fed. R. Civ. P. 6(b)(2), and a Rule 60(b) motion suspends the deadline for filing

9

an appeal until the Court rules on the motion only if the motion is filed within 28 days of the entry of judgment, Fed. R. App. P. 4(a)(4)(A)(vi).

Dated: July 1, 2024

                                                                                       SARA L. ELLIS
                                                                                       United States District Judge